UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JAMES D. SYENS,

     Plaintiff,

v.                                                                                    Case No: 8:15-cv-1142-T-JSS

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.
_____/

## **ORDER**

Plaintiff, James D. Syens, seeks judicial review of the denial of his claims for a period of disability, disability insurance benefits, and supplemental security income. As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed proper legal standards, the decision is affirmed.

## BACKGROUND

### A.     Procedural Background

Plaintiff filed applications for disability insurance benefits and supplemental security income on May 16, 2006. (Tr. 206–215.) The Commissioner denied Plaintiff's claims both initially and upon reconsideration. (Tr. 158–163.) Plaintiff then requested an administrative hearing. (Tr. 174.) Upon Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified. (Tr. 117–149.) Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and, accordingly, denied Plaintiff's claims for benefits ("Initial Decision"). (Tr. 14–26.) Plaintiff requested review from the Appeals Council, which the Appeals

Council denied.  (Tr. 1–4.)  Plaintiff then timely filed a complaint with the Court and the Court reversed the Initial Decision and remanded the case for further proceedings.  (Tr. 1747–1763.)

On remand, Plaintiff appeared and testified at a second hearing before an ALJ.  (Tr. 1660–1726.)  After the hearing, the ALJ issued a decision finding Plaintiff not disabled.  (Tr. 1636–1659.)  Plaintiff requested review from the Appeals Council, which the Appeals Council denied.  (Tr. 1599–1602, 1633–1635.)  Thereafter, Plaintiff timely filed a timely complaint with this Court.  (Dkt. 1.)  The case is now ripe for review under 42 U.S.C. §§ 405(g) and 1383(c)(3).

**B.     Factual Background and the ALJ's Decision**

Plaintiff, who was born in 1963, claimed disability beginning on November 30, 2005 ("Alleged Onset Date").  (Tr. 210, 1642.)  Plaintiff has a twelfth grade education and past relevant work experience as a home builder and construction worker.  (Tr. 1650, 1666.)  Plaintiff alleged disability due to heart disease and diverticulitis.  (Tr. 226.)

In rendering the decision, the ALJ concluded that Plaintiff had not performed substantial gainful activity since his Alleged Onset Date.  (Tr. 1642.)  After conducting a hearing and reviewing the evidence of record, the ALJ determined that Plaintiff had the following severe impairments: coronary artery disease ("CAD") and chest pain in conjunction with hypertension, history of multiple status-post coronary artery bypass grafts ("CABG"), diverticulitis, and a status-post acromioclavicular joint tear in his right shoulder.  (Tr. 1642.)  Notwithstanding the noted impairments, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 1644.)

The ALJ then concluded that Plaintiff retained the following residual functional capacity ("RFC"):

> [T]he claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except that he was required to have a sit & stand option, allowing him to alternate between sitting and standing positions at 30 minute intervals throughout the workday. He was able to perform occasional pushing & pulling with the bilateral upper extremities, and frequent handling, fingering, and reaching in all directions, including overhead reaching, with the bilateral upper extremities. The claimant was limited to occasional balancing, stooping, kneeling, crouching, and climbing of ramps and stairs, but precluded from climbing ladders, ropes or scaffolds or from crawling; and he had to avoid concentrated exposure to extreme temperatures, wetness, humidity, and excessive vibration as well as avoid all exposure to hazardous machinery and unprotected heights. From a mental standpoint, he was capable of work that was simple, routine, repetitive one-to-three steps tasks in a low stress job, which is defined as having only occasional decision-making and only occasional changes in the work setting.

(Tr. 1644–1655.)   In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of his symptoms were not fully credible.  (Tr. 1645.)

Considering Plaintiff's noted impairments and the assessment of a vocational expert ("VE"), however, the ALJ determined that Plaintiff could not perform his past relevant work.  (Tr. 1650.)  Given Plaintiff's background and RFC, the VE testified that Plaintiff could perform other jobs existing in significant numbers in the national economy, such as a clerical addresser, an order clerk (food and beverage), and an electric bonder assembler.  (Tr. 1651.)  Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled.  (Tr. 1652.)

## APPLICABLE STANDARDS

To be entitled to benefits, a claimant must be disabled, meaning that the claimant must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be

expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A),

1382c(a)(3)(A).  A "physical or mental impairment" is an impairment that results from anatomical,

physiological, or psychological abnormalities that are demonstrable by medically acceptable

clinical and laboratory diagnostic techniques.  42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, in order to regularize the adjudicative process,

promulgated the detailed regulations currently in effect.  These regulations establish a "sequential

evaluation process" to determine whether a claimant is disabled.  20 C.F.R. § 416.920.  If an

individual is found disabled at any point in the sequential review, further inquiry is unnecessary.

20 C.F.R. § 416.920(a).  Under this process, the ALJ must determine, in sequence, the following:

(1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the

claimant has a severe impairment, i.e., one that significantly limits the ability to perform work-

related functions; (3) whether the severe impairment meets or equals the medical criteria of 20

C.F.R. Part 404, Subpart P, Appendix 1; and, (4) whether the claimant can perform his or her past

relevant work.  If the claimant cannot perform the tasks required of his or her prior work, step five

of the evaluation requires the ALJ to decide if the claimant can do other work in the national

economy in view of the claimant's age, education, and work experience.  20 C.F.R. § 416.920(a).

A claimant is entitled to benefits only if unable to perform other work.  *Bowen v. Yuckert*, 482 U.S.

137, 140–42 (1987); 20 C.F.R. § 416.920(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it

is supported by substantial evidence and comports with applicable legal standards.  *See* 42 U.S.C.

§ 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting

*Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400

(11th Cir. 1996).   While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions.   *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In reviewing the Commissioner's decision, the court may not decide the facts anew, re-weigh the evidence, or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision.   *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).   The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal.   *Keeton*, 21 F.3d at 1066.   The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied.   42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

## ANALYSIS

Plaintiff challenges the ALJ's decision on the following grounds: (1) the ALJ failed to consider Plaintiff's claim for supplemental security income benefits; (2) the ALJ erred by discrediting Plaintiff's pain testimony; (3) the ALJ erred by discrediting a consultative examining physician's opinions; and (4) the ALJ erred by relying on the VE's testimony that Plaintiff is capable of performing jobs existing in significant numbers in the national economy.   For the reasons that follow, none of these contentions warrants reversal.

### A.      Plaintiff's Claim for Supplemental Security Income

Plaintiff argues that the ALJ erred by not considering Plaintiff's claim for supplemental security income and instead reviewing only Plaintiff's claim for disability insurance benefits. (Dkt. 18 at 24.)   Plaintiff contends that reversal of the ALJ's decision and remand to the ALJ with

instructions "to consider all of the Plaintiff's medical records . . . to determine whether the Plaintiff is disabled for purposes of Supplemental Security Income" is warranted.  (Dkt. 18 at 24–25.)

In response, the Commissioner argues that the Court lacks jurisdiction to review the denial of Plaintiff's claim for supplemental security income benefits because "Plaintiff elected only to appeal the denial of his Title II DIB [disability insurance benefits] application through the administrative process" and "[a]t no time did Plaintiff request the ALJ or Commissioner reopen the October 2007 reconsideration denial of his SSI [supplemental security income] claim or assert that his request for a hearing was for both applications."  (Dkt. 20 at 4–8.)

A review of the record shows that, on May 16, 2006, Plaintiff filed applications for disability insurance benefits and supplemental security income.  (Tr. 206–215.)  In January 2007, Plaintiff's claims were denied.  (Tr. 158–163.)  On March 23, 2007, Plaintiff employed an attorney to represent him "before the Social Security Administration in [his] social security disability case, Supplemental Security Income (SSI) case or both."  (Tr. 164.)  On March 28, 2007, Plaintiff filed a request for reconsideration.  (Tr. 166.)  In his request for reconsideration form, Plaintiff did not complete the portion of the form requiring specification of the type of claim for which reconsideration was requested ("e.g., retirement, disability, hospital insurance, SSI, SVB, etc.") and did not complete any of the portions of the form pertaining to supplemental security income. (Tr. 166.)  In an undated attorney designation form that appears to be part of Plaintiff's request for reconsideration, Plaintiff stated that he appointed his attorney to "act as [his] representative in connection with [his] claim(s) or asserted right(s) under" "Title II," which is disability insurance benefits.  (Tr. 167.)  Plaintiff did not, however, check the box for supplemental security income. (Tr. 167.)

Plaintiff's claims for disability insurance benefits and supplemental security income were denied upon reconsideration.  (Tr. 168–172.)  Plaintiff then requested a hearing before an ALJ. (Tr. 174.)  The Commissioner provided Plaintiff with notice of his hearing before the ALJ.  (Tr. 180–184.)  In the notice of hearing, as required by Section 416.1438(b), Title 20, Code of Federal Regulations, under the heading "Issues I Will Consider In Your Case," the notice stated as follows:

> The hearing concerns *your application of May 10, 2006, for a period of disability and Disability Insurance Benefits* under sections 216(i) and 223(a) of the Social Security Act (Act).

> I will decide if you have enough earnings under Social Security to be insured for Disability Insurance Benefits. If you do, I must decide if you became disabled while insured.

(Tr. 181) (emphasis added.)  Thus, the notice of hearing notified Plaintiff that only his disability insurance benefits claim would be considered at the hearing before the ALJ.  In accordance with Section 416.1439, Title 20, Code of Federal Regulations, the notice stated that "If you object to the issues I have stated, or to any other aspect of the scheduled hearing, you must tell me in writing why you object. You must do this at the earliest possible opportunity before the hearing."  (Tr. 182.)  Plaintiff submitted his acknowledgement of receipt of the notice of hearing, stating that he would attend the hearing.  (Tr. 202.)  There is no evidence in the record that Plaintiff submitted written objections to the issues that would be considered at his hearing before the ALJ, i.e., that only his claim for disability insurance benefits, and not supplemental security income, would be considered.

Plaintiff's hearing before the ALJ was held on October 15, 2009.  (Tr. 117–149.)  After the hearing, the ALJ issued the Initial Decision, denying Plaintiff's claim for a period of disability and disability insurance benefits.  (Tr. 17–24.)  In the Initial Decision, the ALJ did not consider Plaintiff's claim for supplemental security income.  (Tr. 17–24.)  Plaintiff requested review of the

Initial Decision.  (Tr. 205.)  In his brief to the Appeals Council, Plaintiff did *not* raise as one of his issues on appeal that the ALJ erred by not considering Plaintiff's claim for supplemental security income benefits.  (Tr. 315–334.)

After the Appeals Council declined review of Plaintiff's claim (Tr. 1–4), Plaintiff appealed the Initial Decision.  The Court issued a Report and Recommendation, which was adopted (Tr. 1761–1762), recommending that the case be remanded with instructions to the ALJ as to step five of the sequential process.  (Tr. 1747–1760.)  In the Court's Report and Recommendation, the Court noted as follows:

> Although the record contains an application for supplemental security income, the law judge's decision mentions only an application for disability insurance benefits, and his determination is limited to whether the plaintiff was disabled between the onset date and the date he was last insured in 2008. Although the plaintiff's memorandum references more recent evidence, the plaintiff does not argue that the law judge's determination was erroneous in this respect.

(Tr. 1747, n.2.)   On remand, the Commissioner notified Plaintiff that, because his case was remanded, he would be notified of the time and place of his hearing before the ALJ.  (Tr. 1813–1814.)  The letter stated as follows:

> At your hearing, you may present your case to the ALJ who will make the decision on your claim(s). The ALJ will consider the issue(s) you raise, the evidence now in your file, and any additional evidence you provide. The ALJ may also consider other issues, including issues that were decided in your favor in the decision you appealed. The Notice of Hearing will list the issues the ALJ plans to consider at the hearing.

(Tr. 1813.)  Thereafter, the Commissioner provided Plaintiff with notice of his hearing before the ALJ.  (Tr. 1833–1848.)  Under the heading "Issues I Will Consider," the notice of hearing stated as follows:

> The hearing concerns *your application of May 16, 2006, for a Period of Disability and Disability Insurance Benefits* under sections 216(i) and 223(a) of the Social Security Act (the Act). I will consider whether you are disabled under sections 216(i) and 223(d) of the Act.

* * *

> I will also consider whether you have enough earnings under Social Security to be insured for a Period of Disability and Disability Insurance Benefits. If you do, I must decide whether you became disabled while you were insured.
>
> Our records indicate that your date last insured is December 31, 2009. If this is correct, I must decide whether you became disabled on or before that date.

(Tr. 1840–1841) (emphasis added.)   Further, the notice instructed Plaintiff to submit written objections to the issues the ALJ will consider at the hearing, if he had any such objections.  (Tr. 1841.)  Plaintiff submitted his acknowledge of receiving the hearing notice, in which he indicated that he would be attending the hearing.  (Tr. 1851.)  There is no indication in the record that Plaintiff submitted objections to the issues the ALJ would consider at the hearing.

During Plaintiff's hearing before the ALJ, the ALJ had the following exchange with Plaintiff's attorney:

> ALJ: Do we have a Title XVI [supplemental security income] application somehow that's been submitted that's --
> ATTY: I don't think we do, Judge.
> ALJ: Yeah, I mean the prior decision was all Title II [disability insurance benefits]. I did not see a subsequent application where a Title XVI was thrown in.

(Tr. 1663.)  In the ALJ's decision, the ALJ considered Plaintiff's claims for a period of disability and disability insurance benefits, not his claim for supplemental security income benefits.  (Tr. 1639.)

Plaintiff requested review of the ALJ's decision.  (Tr. 1633–1635.)  In his request for review form, Plaintiff stated as follows: "Due to complications as a result of heart surgery and a heart condition including fatigue, pain, and difficulties with exertion, the claimant contends he is disabled *for purposes of Social Security Disability* and the decision of the ALJ denying his claim is not supported by the evidence of record."  (Tr. 1635) (emphasis added.)  In his brief to the

Appeals Council, Plaintiff did *not* allege as one of his issues on appeal that the ALJ erred by failing to consider Plaintiff's claim for supplemental security income.  (Tr. 1605–1628.)

Plaintiff now argues that the case should be remanded for the ALJ to consider all the evidence to determine whether Plaintiff is entitled to supplemental security income benefits.  (Dkt. 18 at 24–25.)  Plaintiff does not address whether he preserved this issue during the course of his administrative appeals.  In response, the Commissioner argues that "Plaintiff does not contend he requested a hearing or otherwise appealed the SSI [supplemental security income] reconsideration determination but instead merely notes that he filed an application for SSI" and that "Plaintiff elected only to appeal the denial of his Title II DIB [disability insurance benefits] application through the administrative process."  (Dkt. 20 at 5.)  The Commissioner argues, because Plaintiff never requested that "the ALJ or Commissioner reopen the October 2007 reconsideration denial of his SSI claim or assert[ed] that his request for a hearing was for both applications," "the October 2007 SSI reconsideration determination (Tr. 170-72) became binding on all parties when Plaintiff did not request a hearing on his SSI application."  (Dkt. 20 at 6–7.)  The Commissioner contends that Plaintiff did not exhaust his administrative remedies as to his claim for supplemental security income and thus there is no "final decision" that is subject to judicial review.  (Dkt. 20 at 7.)  Accordingly, the Commissioner argues that Plaintiff cannot establish subject matter jurisdiction for this Court to review the denial of Plaintiff's supplemental security income claim.

Pursuant to the Social Security Act, a claimant may seek judicial review "after any final decision of the Commissioner of Social Security made after a hearing to which [claimant] was a party" and "[n]o findings of fact or decision of the Commissioner of Social Security shall be reviewed by any person, tribunal, or governmental agency except as herein provided."  42 U.S.C. §§ 405(g), (h).  The Act "does not define 'final decision,' instead leaving it to the SSA to give

meaning to that term through regulations." *Sims v. Apfel*, 530 U.S. 103, 106–107 (2000).  The Social Security Regulations provide that when the claimant has "completed the steps of the administrative review process listed in paragraphs (a)(1) through (a)(4) of this section [which include the initial determination, reconsideration, hearing before an ALJ, and review by the Appeals Council], [the Commissioner] will have made [its] final decision" and the claimant's next step in the appeals process is to request judicial review.  20 C.F.R. § 416.1400(a)(5).  "Thus, to obtain review in federal court under § 405(g), a social security claimant must have: (1) presented his claim for benefits to the Commissioner; and (2) exhausted his administrative remedies." *Anderson v. Comm'r of Soc. Sec.*, 544 F. App'x 861, 862 (11th Cir. 2013) (per curiam) (affirming the district court's dismissal of plaintiff's complaint for lack of subject matter jurisdiction because, although the Commissioner had denied plaintiff's claim "initially and on reconsideration," the Commissioner "had not yet acted on [plaintiff's] request for an ALJ hearing").  "This means claimant must have completed each of the steps of the administrative review process." *Crayton v. Callahan*, 120 F.3d 1217, 1220 (11th Cir. 1997).

Here, although Plaintiff exhausted his administrative remedies as to his claim for disability insurance benefits, the record shows that he did not exhaust his administrative remedies as to his claim for supplemental security income.  After the denial of his claims on reconsideration, Plaintiff did not contest the denial of his supplemental security claim during his administrative appeals, but only contested the denial of his claim for disability insurance benefits.  Specifically, as set forth above, upon receiving the Commissioner's notice of hearing before the ALJ for his first hearing before an ALJ, Plaintiff did not contend that the denial of his claim for supplemental security income claim should be considered by the ALJ in addition to his claim for disability insurance benefits.  (Tr. 181, 202.)  The ALJ held a hearing and issued the Initial Decision as to Plaintiff's

claim for disability insurance benefits.  (Tr. 17–24, 117–149.)  At that point, the Commissioner's denial of Plaintiff's supplemental security income claim became binding.  20 C.F.R. § 416.1421(a) (stating that the Commissioner's decision on reconsideration "is binding unless" the claimant "requests a hearing before an administrative law judge within the stated time period and a decision is made").  Although Plaintiff requested a hearing before the ALJ after his claims were denied upon reconsideration, Plaintiff does not contend that his request for a hearing was for both of his applications for benefits and, on its face, Plaintiff's request for hearing does not state what claims are being asserted.  (Tr. 174.)  Nonetheless, the Initial Decision only concerns Plaintiff's claim for disability insurance benefits and not his claim for supplemental security income benefits.  Thus, no "decision [was] made" regarding Plaintiff's supplemental security income application and, accordingly, the Commissioner's decision denying Plaintiff's supplemental security income claim on reconsideration is binding.  20 C.F.R. § 416.1421(a).

Plaintiff's failure to preserve his claim for supplemental security income benefits is further confirmed by Plaintiff's actions after the Initial Decision.  In his first brief to the Appeals Council, Plaintiff did not argue that the ALJ's failure to consider his supplemental security income claim was erroneous.  (Tr. 315–334.)  Next, in his appeal of the Initial Decision to the Court, Plaintiff did not raise the ALJ's failure to consider his claim for supplemental security income as an issue on appeal.  (Tr. 1747, n.2.)  Further, on remand, in its notice of hearing before the ALJ, the Commissioner notified Plaintiff that, at the hearing, the ALJ would be considering only Plaintiff's claim for disability insurance benefits, and Plaintiff did not object to this notice.  (Tr. 1840–1841, 1851.)  Then, at Plaintiff's second hearing before the ALJ, Plaintiff's counsel stated that there was no supplemental security income claim to be considered by the ALJ.  (Tr. 1663.)  Finally, in his brief to the Appeals Council in his appeal of the ALJ's decision, Plaintiff did not contend that the

ALJ erred by failing to consider his claim for supplemental security income.  (Tr. 1605–1628, 1631–1635.)

"It is uncontested that [Plaintiff] could have obtained full administrative review" of the denial of his supplemental security income claim, "yet [he] failed" to seek review of the denial of his supplemental security income claim after its denial upon reconsideration.  *See Mathews v. Eldridge*, 424 U.S. 319, 328 (1976).  Because "Plaintiff failed to exhaust each step of the administrative review process" as to his claim for supplemental security income, there is no final decision for this Court to review "as required by § 405(g)."  *Troxel v. Comm'r of Soc. Sec.*, No. 2:16-CV-141-FTM-38CM, 2016 WL 3745725, at *1 (M.D. Fla. July 12, 2016).  Accordingly, Plaintiff's contention does not warrant reversal.

## B.      Credibility of Plaintiff's Pain Testimony

In Plaintiff's brief, Plaintiff raises two issues regarding the ALJ's determination of the credibility of Plaintiff's testimony about his symptoms, including pain.  First, Plaintiff contends that the ALJ erred because Plaintiff has an impairment that could reasonably account for his testimony regarding his chest pain.  (Dkt. 18 at 15.)  Specifically, Plaintiff contends that the medical evidence shows that after his coronary surgery, Plaintiff's sternum did not fully heal, which causes his chest pain.  (Dkt. 18 at 15.)

When determining whether a claimant is disabled, in addition to objective record evidence, the ALJ must consider the claimant's symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence.  20 C.F.R. § 404.1529.  To evaluate whether a claimant has established disability through the claimant's testimony of pain and other subjective symptoms, the ALJ must apply the following test: first, whether there is evidence of an underlying medical condition and, second, whether there

is objective medical evidence substantiating the severity of the pain from the condition or whether the medical condition is of sufficient severity that it would reasonably be expected to produce the pain alleged.  *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991); *see* 20 C.F.R. § 404.1529. Plaintiff's contention is unfounded because the ALJ specifically found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms."  (Tr. 1645.)  Plaintiff's first contention is contradicted by the ALJ's explicit finding and thus does not warrant reversal.

Plaintiff next contends that the ALJ erred by not sufficiently articulating his reasons for discrediting Plaintiff's testimony about his chest pain and symptoms.  (Dkt. 18 at 17–21.)  As mentioned above, although the ALJ concluded that Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms," the ALJ found that Plaintiff's testimony regarding the intensity, persistence and limiting effects of his pain was not entirely credible.  (Tr. 1645.)

As here, when an ALJ determines that the claimant's medical condition could reasonably be expected to produce the claimant's pain or other symptoms, the ALJ must then evaluate the intensity and persistence of the claimant's symptoms, including pain, to determine their effect on the claimant's capacity to work.  20 C.F.R. § 404.1529(c)(1); *Klawinski v. Comm'r of Soc. Sec.*, 391 F. App'x 772, 776–777 (11th Cir. 2010).  The ALJ considers all available evidence, including objective medical evidence, statements from the claimant, treating physicians, and non-treating physicians, and medical opinions.  20 C.F.R. § 404.1529(c)(1)–(2).  Additionally, the ALJ considers other information claimant provides, such as (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the claimant took to alleviate pain or other symptoms; (5) treatment, other than

medication, the claimant received for relief of pain or other symptoms; and (6) any measures the claimant personally used to relieve pain or other symptoms. *Id.* §§ 404.1529(c)(3), 416.929(c)(3).

An ALJ's determination of the credibility of a claimant's testimony regarding subjective pain is entitled to deference and a reviewing court will not disturb a clearly-articulated credibility finding with substantial supporting evidence in the record. *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995). Thus, if an ALJ discredits a claimant's testimony, the ALJ must articulate, explicitly and adequately, reasons for not crediting the testimony. *Holt*, 921 F.2d at 1223–1224. "Implicit in this rule is the requirement that such articulation of reasons . . . be supported by substantial evidence." *Hale v. Bowen*, 831 F.2d 1007, 1012 (11th Cir. 1987); *Dyer v. Barnhart*, 395 F.3d 1206, 1212 (11th Cir. 2005) (finding the ALJ's articulation of reasons for discrediting a claimant's testimony supported by substantial evidence because the ALJ considered the claimant's daily activities, frequency of symptoms, and types and dosages of medication). If an ALJ fails to adequately explain the reasons for discrediting a claimant's testimony, the testimony must be accepted as true as a matter of law. *Hale*, 831 F.2d at 1012.

As the reviewing Court, "[t]he question is not . . . whether the ALJ could have reasonably credited [claimant's pain] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 938–939 (11th Cir. 2011) (finding that substantial evidence supported the ALJ's decision to discredit claimant's pain testimony because the testimony was inconsistent with claimant's testimony regarding his daily activities and with the records from his treating and examining physicians, showing claimant was capable of doing light work); *Dyer*, 395 F.3d at 1212 (reversing the district court's reversal of the ALJ's decision because "the district court improperly reweighed the evidence and failed to give substantial deference to the Commissioner's decision" to discredit claimant's pain testimony).

Contrary to Plaintiff's contention, the ALJ's conclusion that the record evidence contradicts Plaintiff's allegation of total disability is supported by substantial evidence.  In the decision, the ALJ stated that he considered Plaintiff's testimony regarding his chest pain after undergoing heart surgery, which Plaintiff testified limits his ability to sit, stand, or walk for significant periods of time.  (Tr. 1645, 1670.)  The ALJ concluded that this testimony was not fully credible after examining objective medical evidence and Plaintiff's testimony regarding his daily activities.  (Tr. 1645–1650.)

In March 2006, treatment records from Plaintiff's cardiologist Dr. Glenn H. Rayos noted that, after his surgery, Plaintiff was "doing well except for some discomfort at the incision site" and "is now back to biking and walking without difficulty."  (Tr. 354.)  A CT scan of Plaintiff's chest in May 2006 showed "normal" and "unremarkable" findings and no sign of pulmonary embolus.  (Tr. 359.)  In an examination also in May 2016, although Plaintiff's pain was noted, it was "noncardiac" in nature and there was no evidence of dissection and no changes in Plaintiff's "coronary anatomy."  (Tr. 365.)  Further, Plaintiff's cardiac catheterizations did not show recurrent disease (Tr. 364–367, 416–17, 832–833) and electrocardiograms indicated normal functioning. (Tr. 355–257, 473, 543, 832).  Further, Plaintiff's exploratory surgical procedure showed that his wound healed normally.  (Tr. 1067, 1216, 1237, 1647, 1649.)  Treating physicians noted that Plaintiff's chest pain was either non-cardiac in nature (Tr. 365, 417) or atypical (Tr. 427, 1038, 1089).  In February 2009, in treatment notes by Plaintiff's cardiologist, it was noted that "no further cardiac testing [was necessary] at this time as [Plaintiff's] pain is musculoskeletal in nature."  (Tr. 1179.)

As to Plaintiff's testimony that the medications cause him to vomit and feel lackadaisical, "loopy," and nauseous (Tr. 1681–1682, 1699–1700), the ALJ determined that there was no

objective medical evidence corroborating Plaintiff's reports of his medications' side effects.  (Tr. 1649.)  Rather, the ALJ found that the evidence showed that Plaintiff "continued to request and received, narcotic pain medication" and that he did not report these side effects during his examinations with treating physicians.  (Tr. 1649.)  Upon review of the evidence, October and December 2009 treatment notes from Plaintiff's treating physicians state that Plaintiff requested refills of a narcotic prescription, "indicate[d] that he is not having any significant side effects," and reported that the medication was "providing pain relief adequately."  (Tr. 1992, 2002, 2012, 2014.)  Also, November 2009 treatment notes state that Plaintiff requested a refill for a prescription and had not taken it for four days.  (Tr. 2009.)  Finally, in 2006, 2007 and 2009 treatment notes by Plaintiff's cardiologist, Plaintiff denied having any nausea, vomiting, or diarrhea.  (Tr. 817, 824, 847, 876, 2016.)  Accordingly, the ALJ's decision to discredit Plaintiff's testimony regarding the side effects of his medication is supported by substantial medical evidence.

Finally, as to Plaintiff's daily activities, the ALJ first determined that Plaintiff's testimony that he must spend most of his time during the day resting and lying down due to his pain (Tr. 1671–1672, 1677, 1684), was undermined by Plaintiff's testimony that he is capable of attending to his personal care, driving, preparing simple meals, and doing light housework.  (Tr. 1649, 1682, 1688–1690, 1707.)  Further, Plaintiff testified that he can lift a half gallon of milk, walk around the block, and engage in the hobby of making marbles.  (Tr. 1691–1693.)  Finally, Plaintiff testified about an incident in which he tripped while running away from a mailbox in which he put fireworks.  (Tr. 1712–1713.)  The ALJ concluded that Plaintiff's ability to perform these activities, although limited by his pain, indicates that Plaintiff "is not as limited as he alleges."  (Tr. 1650.)

Accordingly, substantial evidence supports the ALJ's decision to find Plaintiff's pain testimony not fully credible because his testimony was undermined by objective medical evidence

and Plaintiff's testimony regarding his daily activities.  As set forth above, although the objective medical evidence shows Plaintiff's complaints about chest pain, evidence after Plaintiff's cardiac surgery does not reveal abnormalities to support Plaintiff's testimony that his pain is totally disabling.  Also, Plaintiff testified that, although limited by his pain, he is able to tend to his personal care, drive, prepare meals, do light household chores, and engage in the hobby of making marbles.  Thus, the ALJ's conclusion that Plaintiff's "allegations of a total inability to work are overstated and unsupported by the medical evidence of record" (Tr. 1650) are adequately explained and supported by substantial evidence.  Accordingly, Plaintiff's contention does not warrant reversal.

## C.      Weight Accorded to Physician's Opinions

Plaintiff contends that the ALJ erred by giving little weight to the opinions of Dr. Rick Limbert, a consultative examining physician.  (Dkt. 18 at 23.)  Specifically, Plaintiff contends that the ALJ's reasons for giving Dr. Limbert's opinions little weight were inadequate.  (Dkt. 18 at 23.)

On August 24, 2013, Dr. Limbert performed an examination of Plaintiff and provided an opinion as to Plaintiff's physical ability to do work-related activities.  (Tr. 2030–2043.)  Thus, as Plaintiff concedes (Dkt. 18 at 23), Dr. Limbert was a one-time examiner who was not Plaintiff's treating physician.  Dr. Limbert summarized Plaintiff's explanation of his medical history, chest pain, and how his chest pain affects his ability to work.  (Tr. 2030.)  Further, Plaintiff reported that, due to his pain, he can only sit or stand for one to two hours, does not walk, and can only lift three to five pounds repetitively.  (Tr. 2031.)

From his examination, Dr. Limbert noted that Plaintiff's neck was normal and that his heart had a "regular rate and rhythm without murmurs, rubs, or gallops."  (Tr. 2031–2032.)  Dr. Limbert noted that Plaintiff had "no clubbing, cyanosis, or edema" in his extremities, that his gait was

symmetric and steady, and his hand-eye coordination was "good." (Tr. 2032.) Plaintiff had "no palpable muscle spasms" and regular strength. (Tr. 2032.) As to his musculoskeletal system, Plaintiff had "[n]o joint swelling, erythema, effusion or deformity, but "had tenderness to palpitation on bilateral shoulders and chest." (Tr. 2033.) Dr. Limbert found Plaintiff "able to lift, carry and handle light objects," perform tasks requiring his fine motor skills, "rise from a sitting position without assistance," walk on his heels and toes, and dress and undress, but unable to squat. (Tr. 2033.)

In his medical source statement, Dr. Limbert found that Plaintiff could occasionally lift and carry up to twenty pounds, but never over twenty pounds, and could sit, stand, and walk for three hours without interruption and for six hours out of an eight hour workday. (Tr. 2035.) Plaintiff can, Dr. Limbert opined, occasionally climb stairs and ramps, balance, kneel, but never climb ladders or scaffolds, stoop, crouch, or crawl. (Tr. 2037.) As far as environmental limitations, Dr. Limbert opined that Plaintiff can occasionally be exposed to moving mechanical parts and operating a motor vehicle, can frequently be exposed to humidity and wetness, dust, odors, fumes, pulmonary irritants, and extreme temperatures, but can never be exposed to unprotected heights or vibrations. (Tr. 2038.) Finally, Dr. Limbert found Plaintiff capable of all of the following activities: shopping, traveling without a companion, walking without assistance, walking a block at a reasonable pace, walking on rough or uneven surfaces, using public transportation, climbing a few steps with use of a handrail, preparing simple meals, caring for his personal hygiene, and handling, sorting, and using paper and files. (Tr. 2039.)

The ALJ gave little weight to Dr. Limbert's opinions because "his opinion and assessments were based on an examination performed almost four years past the date last insured." (Tr. 1648.) Specifically, Dr. Limbert performed his examination in August 2013, about two weeks before

Plaintiff's hearing before the ALJ. (Tr. 1641.) But, Plaintiff was last insured on December 31, 2009. (Tr. 1641.) The Court finds that the ALJ did not err in according Dr. Limbert's opinions little weight because (1) Dr. Limbert is not a treating physician whose opinions are entitled to deference and (2) the ALJ adequately explained that he discounted Dr. Limbert's opinions because they were made nearly four years after Plaintiff's date last insured.

First, in evaluating the weight to accord medical opinions, an ALJ considers the examining relationship, the treatment relationship, the length of the treatment relationship, the frequency of examination, the nature and extent of the treatment relationship, and the record's support of and consistency with the opinions. 20 C.F.R. § 404.1527(c). Consultative examiners' opinions are not entitled to the deference normally given treating sources because they are not treating physicians. *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987) (finding that opinions of consultative examining physicians "are not entitled to deference because as one-time examiners they were not treating physicians"); *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1160–1161 (11th Cir. 2004) ("The ALJ correctly found that, because [a consultative examiner] examined [claimant] on only one occasion, her opinion was not entitled to great weight."); 20 C.F.R. § 404.1527(c)(2) (explaining that treating sources are given greater weight because their opinions "may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations"). Dr. Limbert was not a treating physician, but instead examined Plaintiff on one occasion to provide opinions as to Plaintiff's disability application. Thus, contrary to Plaintiff's contention, Dr. Limbert's opinions were not entitled to deference by the ALJ.

Even though the ALJ was not required to afford Dr. Limbert's opinions significant weight, the ALJ nonetheless sufficiently explained why he gave Dr. Limbert's opinions little weight. Specifically, the ALJ did not err by discrediting Dr. Limbert's opinions because they were based on an examination of Plaintiff performed by Dr. Limbert four years after Plaintiff's date last insured. To establish his eligibility for disability insurance benefits, Plaintiff was required to show his disability prior to his date last insured, which was December 31, 2009. *See* 42 U.S.C. § 423(a)(1)(A) (stating that an individual is entitled to disability insurance benefits when, among other prerequisites, the individual "is insured for disability insurance benefits"); *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (holding that "a claimant is eligible for benefits where she demonstrates disability on or before" the date claimant was last insured). Evidence after a claimant's date last insured should be considered by the ALJ and is relevant to the extent it bears "upon the severity of the claimant's condition before the expiration of his or her insured status." *Meek v. Astrue*, No. 308-CV-317-J-HTS, 2008 WL 4328227, at *2 (M.D. Fla. Sept. 17, 2008) (internal citations omitted); *Cooper v. Comm'r of Soc. Sec.*, 277 F. Supp. 2d 748, 754 (E.D. Mich. 2003) ("Medical evidence that postdates the insured status date may be, and ought to be, considered, but only insofar as it bears on the claimant's condition prior to the expiration of insured status.").

An ALJ does not err by giving little weight to opinions rendered after a claimant's date last insured. *See Caces v. Comm'r, Soc. Sec. Admin.*, 560 F. App'x 936, 940–941 (11th Cir. 2014) (finding that an ALJ "correctly gave 'little weight'" to opinions of a treating physician who did not begin treating claimant until after his date last insured); *Goff ex rel. Goff v. Comm'r of Soc. Sec.*, 253 F. App'x 918, 921 (11th Cir. 2007) (finding that the "ALJ stated with sufficient specificity that he was according no weight to [a treating physican's] opinion letter because he

found it did not represent [claimant's] work status prior to his last insured date"). Contrary to Plaintiff's contention, giving Dr. Limbert's opinions little weight because they were rendered almost four years after Plaintiff's date last insured was proper.

Additionally, the ALJ's decision to accord Dr. Limbert's opinions little weight was supported by the opinions of State agency consultants, Dr. Eric Puestow and Dr. Edward DeMiranda, Plaintiff's treatment records, and Plaintiff's testimony about his daily activities. Dr. Puestow and Dr. DeMiranda opined on Plaintiff's physical RFC after reviewing evidence from prior to Plaintiff's date last insured. (Tr. 706–712, 909–916.) Unlike Dr. Limbert, who found that Plaintiff was never able to stoop or crouch (Tr. 2037), Dr. Puestow found that Plaintiff had no postural limitations (Tr. 708) and Dr. DeMiranda found that Plaintiff is capable of frequently stooping and occasionally crouching. (Tr. 911.) The ALJ accorded Dr. Puestow's and Dr. DeMiranda's opinions "moderate weight" because the ALJ found additional limitations to what Dr. Puestow and Dr. DeMiranda opined based on "additional evidence received since their review of the medical record" and based on Plaintiff's testimony regarding symptoms of dizziness, lightheadedness, fatigue, and nausea. (Tr. 1648.) Thus, the ALJ accordingly "reduced the claimant's ability to sedentary exertion work and imposed additional limitations." (Tr. 1648.) Further, as discussed above, Plaintiff post-operative treatment records show that Plaintiff was recovering well and returned to biking and walking "without difficulty." (Tr. 354.) Finally, Plaintiff testified that he attends to his personal care, drives, prepares simple meals, does light housework, and engages in the hobby of marble-making. (Tr. 1649, 1682, 1688–1693, 1707.)

Therefore, Plaintiff's contention does not warrant reversal because Dr. Limbert's opinions were not entitled to significant weight because he is not Plaintiff's treating physician and,

nonetheless, the ALJ adequately described his reasoning for affording Dr. Limbert's opinions little weight, which was supported by substantial evidence.

### D.   The ALJ's Reliance on Testimony of the Vocational Expert

Plaintiff's final contention is that the ALJ erred by relying on the VE's findings as to jobs Plaintiff can perform existing in significant numbers in the national economy.  (Dkt. 18 at 21–23.) Plaintiff first argues that the ALJ's hypotheticals to the VE failed to include Plaintiff's limitations "regarding fatigue and/or tiredness."  (Dkt. 18 at 22.)  Thus, the ALJ should not have relied on the VE's testimony regarding jobs Plaintiff is capable of performing because the testimony was premised on a deficient hypothetical.  Further, Plaintiff argues that the ALJ could not rely on the VE's testimony about jobs Plaintiff could perform because there is evidence that Plaintiff cannot stoop and "the vocational expert indicated if the Plaintiff was unable to stoop . . . the claimant was not capable of working."  (Dkt. 18 at 22.)

At the hearing, the VE testified, and the ALJ concluded, that Plaintiff is unable to perform his past relevant work as a home builder and construction worker.  (Tr. 1650, 1718–1720.)  The ALJ then asked the ALJ whether a claimant with Plaintiff's age, education, and work experience could perform jobs existing in the national economy if the claimant is limited to sedentary work with the following additional limitations: occasionally being able to push and pull with claimant's upper extremities, climb ramps and stairs, balance, stoop, kneel, and crouch; never being able to crawl or climb ladders, ropes, or scaffolds; frequently being able to reach overhead bilaterally in all directions and handle and finger objects; and having a job that (1) allows the claimant to alternate between sitting and standing at thirty-minute intervals, (2) avoids concentrated exposure to extreme temperatures, wetness, humidity, and excessive vibration, and (3) has no exposure to hazardous machinery and unprotected heights.  (Tr. 1719–1721.)  The VE testified that the

hypothetical claimant could perform jobs as a clerical addresser, telephone food and beverage order clerk, and an electrical bonder and assembler. (Tr. 1721–1722.) The ALJ relied on the VE's testimony and concluded that Plaintiff is able to adjust to other work existing in significant numbers in the national economy. (Tr. 1652.)

A claimant's RFC is "the most [claimant] can still do despite [claimant's] limitations" and is assessed "based on all the relevant evidence in [claimant's] case record." 20 C.F.R. § 404.1545(a)(1); *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004). When the ALJ determines that a claimant cannot perform past relevant work, then the Commissioner must produce evidence that claimant is able to do other jobs existing in significant numbers in the national economy given the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1560(c). The burden then shifts to the claimant to show that the claimant "is unable to perform the jobs that the Commissioner lists." *Doughty v. Apfel*, 245 F.3d 1274, 1278, n.2 (11th Cir. 2001).

"[T]he Commissioner's preferred method of demonstrating that the claimant can perform other jobs is through the testimony of a [vocational expert]." *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999). The ALJ must "introduce independent evidence, preferably through a vocational expert's testimony, of existence of jobs in the national economy that the claimant can perform" and a vocational expert's testimony constitutes substantial evidence when the ALJ poses a hypothetical question to the vocational expert "which comprises all of the claimant's impairments." *Wilson*, 284 F.3d at 1227. The ALJ is "not required to include findings in the hypothetical that the ALJ had properly rejected as unsupported." *Crawford*, 363 F.3d at 1161. Further, an ALJ's hypothetical needs to include the claimant's impairments, "not each and every symptom of the claimant." *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1270 (11th Cir. 2007).

Here, the ALJ's hypothetical to the VE was proper.  As to his symptom of fatigue, at the hearing, the ALJ asked Plaintiff whether he rested or took naps to combat side effects from his medication.  (Tr. 1682.)  In response, Plaintiff testified that he had not gotten much sleep and that he wakes up "wide awake."  (Tr. 1683.)  Plaintiff went on to testify, in response to the ALJ's question of whether Plaintiff takes naps, that he sleeps for an hour or two and that his sleep is irregular.  (Tr. 1683.)  In response to the ALJ's question about whether his medications make Plaintiff "sleepy," Plaintiff testified "Yeah, they'll - - it's weird, it'll make you sleep or not sleepy for me."  (Tr. 1684.)  When testifying about the symptoms of his depression, Plaintiff testified that he felt "lethargic," which he described as feeling like he did not "want to do anything."  (Tr. 1697–1698.)  The ALJ stated that he considered Plaintiff's testimony about his fatigue (as well as other symptoms such as dizziness, lightheadedness, and nausea), and that Plaintiff's limitations from his fatigue and other symptoms were reflected in the ALJ's decision to limit Plaintiff to sedentary with additional limitations.  (Tr. 1648.)

The ALJ was not required to include "each and every symptom" of Plaintiff in his hypothetical to the VE.  *Ingram*, 496 F.3d at 1270.  Even so, the ALJ stated that he accounted for Plaintiff's fatigue in his hypothetical to the VE by limiting Plaintiff to sedentary work and by including additional exertional and non-exertional limitations that erode Plaintiff's ability to do the full range of sedentary work.  (Tr. 1648.)  Specifically, the ALJ stated that although Dr. Puestow and Dr. DeMiranda found Plaintiff capable of light work (Tr. 706–713, 909–916), the ALJ reduced Plaintiff's RFC to sedentary work because of Plaintiff's testimony regarding his fatigue, among other symptoms.  (Tr. 1648.)  Plaintiff identified no additional physical limitations that the ALJ should have incorporated into the hypothetical to the VE based on Plaintiff's fatigue. The ALJ's reliance on the VE's testimony was therefore proper.

As to Plaintiff's contention that the ALJ should have credited the VE's testimony that if Plaintiff is unable to stoop, then he would be unable to perform the jobs listed by the VE (Tr. 1723–1724), the evidence supporting Plaintiff's allegation that he is unable to stoop was properly discredited by the ALJ.  Specifically, Plaintiff's contention that he is unable to stoop is supported by Dr. Limbert's opinion.  (Tr. 2037.)  As determined above (*see* discussion *supra* Section C), the ALJ properly discounted Dr. Limbert's opinions.  Therefore, the ALJ was not required to credit this limitation that the ALJ rejected as unsupported and the ALJ's hypothetical to the VE encompassed the limitations the ALJ found credible.  *See Crawford*, 363 F.3d at 1161.  Therefore, Plaintiff's final contention does not warrant reversal.

The Court has considered Plaintiff's request for oral argument.  (Dkt. 18 at 1.)  "Motions and other applications will ordinarily be determined by the Court on the basis of the motion papers and briefs or legal memoranda," although a court may allow oral argument upon request.  M.D. Fla. Local R. 3.01(j).  Oral argument is not warranted in this case in light of the comprehensive briefs and record provided to the Court.  Further, Plaintiff's issues on appeal have been decided in this Order.  Accordingly, Plaintiff's request for oral argument is denied as moot.

## CONCLUSION

Accordingly, after due consideration and for the foregoing reasons, it is

**ORDERED**:

1.      The decision of the Commissioner is **AFFIRMED**.

2.     The Clerk of Court is directed to enter final judgment in favor of the Commissioner and close the case.

**DONE** and **ORDERED** in Tampa, Florida on August 19, 2016.

_____
JULIE S. SNEED
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of Record